# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

MELODY FORSHEE,

            **Debtor.**

**Bankruptcy Case
No. 09-42007**

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

    Jay A. Kohler, Idaho Falls, Idaho, Attorney for Debtor.

    Robert J. Maynes, Idaho Falls, Idaho, Attorney for Charles P. Forshee.

    James A. Spinner, SERVICE & SPINNER, Pocatello, Idaho, Attorney for Chapter 7 Trustee R. Sam Hopkins.

## *Introduction*

Chapter $7^1$ trustee R. Sam Hopkins ("Trustee") filed an Objection to

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 1

[Debtor's] Claim of Exemption and debtor Melody Marler Forshee ("Debtor") responded. Docket Nos. 16; 19. Debtor's estranged husband, Charles Forshee ("Forshee"), also responded to Trustee's objection. Docket No. 40.

The Court conducted a hearing on the objection on August 10, 2010, during which evidence, testimony and argument were presented. Thereafter, the Court took the issues under advisement. The Court has considered the submissions of the parties, the testimony presented, the arguments of counsel, as well as the applicable law, and now issues the following decision. This Memorandum constitutes the Court's findings of fact and conclusions of law, and disposes of the motion. Fed. R. Bankr. P. 7052; 9014.

### *Findings of Fact*

In May 2006, Debtor married Forshee. After their marriage, the couple lived in a townhouse in Idaho Falls that was Forshee's separate property.

In February, 2007, Debtor began publishing a free, weekly

MEMORANDUM OF DECISION - 2

newspaper, the River City Weekly. She operated as a limited liability company, and was the only member. The newspaper was popular in Bonneville County, and generated income through the sale of advertising.

In January, 2008, Forshee sold the townhouse, and applied approximately $40,000 of the proceeds to a down payment on a home located on Cobblestone Lane in Idaho Falls ( the "Cobblestone Lane home"). The mortgage and deed listed the names of both Debtor and Forshee, but it is undisputed that Forshee made all of the mortgage payments, as Debtor received no salary from the River City Weekly.[2] The couple used the Cobblestone Lane home as residence beginning in January, 2008. Ex. 202.

As this was a second marriage for both Debtor and Forshee, with each having children from prior marriages, Debtor and Forshee decided to keep their finances separate. They used separate checking accounts and credit cards, and, other than the Cobblestone Lane home, they appear to

---

[2] The payments made by Forshee were likely funded by his salary which, of course, were community property. However, this fact has no bearing on the Court's analysis.

MEMORANDUM OF DECISION - 3

have acquired little community property. Docket Nos. 1, 17. Forshee also had no affiliation with the River City Weekly, nor was he involved in its operations or financial affairs.

In early 2009, the River City Weekly fell on hard times, and its debts began mounting. Creditors began calling the couple's home, and the company's financial predicament became a major source of stress in their marriage. The relationship deteriorated to the point that Debtor felt the marriage would likely end in divorce.

In September or October 2009,[3] Debtor accepted a three-month contract job in Utah at a greeting card company. Initially, Debtor lived in a motel in Utah. However, about a month or so after she began the contract job, she moved into a short-term rental home in Utah.[4]

---

[3] The evidence is unclear whether Debtor began her contract work in September or October, 2009. At one point during her testimony, she indicated that she lived in a motel in Utah for the first month or month-and-a-half of the job, beginning in the middle or end of September. However, she also repeatedly testified that she moved to Utah in October, 2009. This fact is not material to the resolution of Trustee's objection.

[4] The evidence on this point is, again, inconsistent. Debtor testified that the rental home she originally moved into in Utah was listed for sale, her lease was month-to-month, and when the home was sold, she would have to move

MEMORANDUM OF DECISION - 4

Debtor took few of her own belongings to Utah, including her clothing, a computer, couch, chair, desk, her adult son's bed, and suitcases. She left her other belongings at the Cobblestone Lane home. She returned to the Cobblestone Lane home on weekends; she never changed her mailing address, obtained a Utah driver's license, or registered her vehicle in Utah.

On December 22, 2009, Debtor filed a chapter 7 bankruptcy petition. Forshee did not join in the petition. On the petition, she listed her address as "11346 Daytide Avenue, South Jordan, Utah." Ex. 201.[5] Debtor testified that this address referred to the initial short-term rental. In her schedules, she claimed the Cobblestone Lane home exempt as a homestead for $100,000 pursuant to Idaho Code § 55-1003. Ex. 102. She further indicated

---

out. On the other hand, she also testified that the rental term on that home was for three months. Again, this discrepancy is of no moment in resolving the issues.

[5] Debtor listed the Utah address on her bankruptcy petition because, she explained during her testimony, she did not want to miss receiving any notices from the Court if her mail went to Idaho and she did not collect it for a week or two.

MEMORANDUM OF DECISION - 5

in her schedules her intention to retain the home and to pay pursuant to the contract. Ex. 101. In her Statement of Financial Affairs, Debtor listed the Cobblestone Lane home as a prior address, and indicated that she had resided there from January 2008 to October 2009. Ex. 202.

A few days following the filing of the petition, Debtor traveled from Utah to Idaho Falls to spend Christmas with Forshee and some of the children. On Christmas morning, Forshee indicated to Debtor in strong terms that he intended to seek a divorce. He told Debtor that he had consulted a lawyer, and had some preliminary paperwork in hand. Forshee indicated that he believed the Cobblestone Lane home belonged to him, as he had provided the initial down payment from his separate property and had made all mortgage payments to date. Without consulting counsel, Debtor accepted his statements.

Debtor returned to Utah after Christmas with the understanding that a divorce action was imminent. Her work contract was extended, and the short-term rental she had been living in was sold. On January 21, 2010, Debtor filed a change of address with the Court indicating her new

MEMORANDUM OF DECISION - 6

address was in West Valley City, Utah.  Docket No. 14.  During January, February, March, and April 2010, Debtor stayed in Utah, expecting to be served with divorce papers.

On February 3, 2010, the § 341(a) meeting of creditors was held in Debtor's bankruptcy case.  During that meeting, Debtor was questioned by Trustee about her intentions with regard to the Cobblestone Lane home, at which time she disclaimed any interest in the home, as well as any intention to reside there:

> MR. HOPKINS: So what's your intent with the home there in Idaho Falls?
>
> DEBTOR: I believe that [Forshee] intends to live there.  He had – two of his children have moved in to live with him.  He doesn't feel the market is sufficient to sell the home right now, but I believe his intent is to sell it when the market improves, unless his children decide to stay with him.  I don't intend to live there.
>
> * * * * *
>
> MR. HOPKINS: So you don't claim any interest in the home then?
>
> DEBTOR: I don't right now.  No.  He's made all the – he has made all the mortgage payments.

MEMORANDUM OF DECISION - 7

Ex. 200 at pp. 9-10.

On February 12, 2010, Trustee objected to Debtor's claim of exemption as to the Cobblestone Lane home.

*Conclusions of Law and Disposition*

**A.**

When a bankruptcy case is commenced, "all legal or equitable interests of the debtor in property" become the property of the bankruptcy estate, available for liquidation and distribution to creditors. 11 U.S.C. § 541(a)(1). However, § 522(b)(1) allows individual debtors to exempt property from the bankruptcy estate, thereby shielding it from administration by a chapter 7 trustee. Because Idaho has "opted out" of the Code's exemption scheme, debtors in this state may claim only those exemptions allowable under Idaho law, as well as those listed in § 522(b)(3). Idaho Code § 11-609; 11 U.S.C. § 522(b)(3).

An Idaho debtor is permitted to claim an exemption in a qualifying homestead. Idaho Code § 55-1001, *et seq.*; *In re Cerchione,* 398 B.R. 699, 703 (Bankr. D. Idaho 2009), *aff'd* 414 B.R. 540 (9th Cir. BAP 2009). Once

MEMORANDUM OF DECISION - 8

properly established, the debtor may exempt up to $100,000 of equity in a homestead.  Idaho Code § 55-1003.

As the objecting party, Trustee bears the burden of proving that Debtor's claim of exemption is not proper.  Rule 4003(c); *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); *In re Cerchione*, 398 B.R. at 703.  The validity of the claimed exemption is determined as of the date of filing of the bankruptcy petition.  11 U.S.C. § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001); *In re McHugh*, 10.2 I.B.C.R. 51, 51 (Bankr. D. Idaho 2010).  The homestead exemption statutes are liberally construed in favor of the debtor.  *In re Cerchione*, 398 B.R. at 703; *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005) (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001)).

**B.**

The issue raised by Trustee's objection is whether, given the facts in this case, Debtor may claim a homestead exemption in the Cobblestone Lane home.  Debtor's bankruptcy estate includes all community property of the Debtor and her spouse.  11 U.S.C. § 541(a)(2)(A); *Dumas v. Mantle (In*

MEMORANDUM OF DECISION - 9

*re Mantle)*, 153 F.3d 1082, 1085 (9th Cir. 1998) (all community property not yet divided by a state court is property of the bankruptcy estate); *Fitzgerald v. Clarke (In re Taylor-Clarke)*, 99.4 I.B.C.R. 164, 164 (Bankr. D. Idaho 1999).

Under Idaho law, if a debtor is married, "the homestead may consist of the community or jointly owned property of the spouses or the separate property of either spouse . . . ." Idaho Code § 55-1002. This provision does not limit the homestead exemption to Debtor's undivided interest in community property. Rather, if her homestead exemption is proper, Debtor can effectively insulate the entire community's interest in the Cobblestone Lane home from the reach of Trustee, and not just her undivided interest. *In re Taylor-Clarke*, 99.4 I.B.C.R. at 165.

<u>1.  Intent to Abandon the Cobblestone Lane Homestead</u>.

Under Idaho law, a homestead attaches automatically "from and after the time the property is occupied as a principal residence by the owner . . . ." Idaho Code § 55-1004(1). Here, there is no question that Debtor and Forshee had established their marital residence in the Cobblestone Lane home prior to October 2009. However, in this context,

MEMORANDUM OF DECISION - 10

the Court's focus is the status of Debtor's residence on December 22, 2009, the date she filed her bankruptcy petition.

A homestead "is presumed abandoned if the owner vacates the property for a continuous period of at least six (6) months." Idaho Code § 55-1006. Because she moved to Utah around October 1, 2009, and filed her bankruptcy petition on December 22, 2009, this statutory presumption of abandonment would not apply in this case. However, "an absence of any length, presuming a debtor intended to make another residence his principal residence and abandon a previous one, could constitute an abandonment." *Magic Valley Collections & Recovery, Inc. v. Salinas (In re Salinas)*, 04.3 I.B.C.R. 110, 111 (Bankr. D. Idaho 2004) (citing *In re Tiffany*, 106 B.R. 213, 214 (Bankr. D. Idaho 1989)). Trustee contends that Debtor abandoned the Cobblestone Lane home when she moved to Utah for her employment and to escape her failing marriage.

When a debtor's choice of homestead is in question, the issue is one of the debtor's intent. *In re Salinas*, 04.3 I.B.C.R. at 111. This Court has previously enunciated the factors it considers when determining whether

MEMORANDUM OF DECISION - 11

a homestead has been abandoned. Those factors are 1) whether there is evidence of the debtor's actual intent to abandon the homestead; 2) whether the debtor asserted the homestead exemption in the bankruptcy schedules, suggesting an intent not to abandon; and 3) whether the debtor's current residence is in the nature of a short-term rental. *See In re Salinas*, 04.3 I.B.C.R. at 112; *Oldemeyer v. Couch-Russell (In re Couch-Russell)*, 03.4 I.B.C.R. 230, 233-34 (Bankr. D. Idaho 2004); *In re Koopal*, 226 B.R. 888, 892 (Bankr. D. Idaho 1998). As noted above, in considering these factors the Court is mindful that the validity of Debtor's claimed homestead exemption is determined as of the date she filed her bankruptcy petition, 11 U.S.C. § 522(b)(3)(A), and that homestead exemption statutes are to be liberally construed in favor of the debtor. *In re Cerchione,* 398 B.R. at 703.

Debtor claimed the Cobblestone Lane home exempt in her bankruptcy schedules. In addition, she formally expressed her intention to retain the home and pay for it pursuant to the contract. She also did not seek permanent housing in Utah. Rather, Debtor lived in a motel for

MEMORANDUM OF DECISION - 12

several weeks before moving into the short-term rental housing where she resided on the petition date. These factors therefore suggest that Debtor did not intend to abandon the Cobblestone Lane home as her homestead.

Even so, the other factor in this analysis requires the Court to examine whether there is other evidence of Debtor's actual intent to abandon the homestead. Here, the evidence indicates that Debtor was experiencing both financial and marital trouble in Idaho and that she had accepted a three-month contract job in Utah. She initially lived in short-term rental housing, and commuted to Idaho Falls on most weekends. She took very few personal effects with her, and left the remainder of her things at the Cobblestone Lane home. She never changed her address, registered her vehicle, or obtained a Utah's drivers license. At that point, though her marital situation was rocky, Debtor apparently had hopes that she and Forshee would reconcile. However, the marital landscape changed dramatically on Christmas Day, 2009, when Forshee flatly told her that he intended to divorce her. As shown from her testimony at the § 341(a) meeting, Debtor thereafter assumed that a divorce was imminent.

MEMORANDUM OF DECISION - 13

As explained above, Debtor's right to a homestead exemption in this case is measured by her status on bankruptcy petition day.[6] The Idaho Supreme Court has stated that:

> there must be some clear, unmistakable, affirmative act or series of acts indicating a purpose to repudiate ownership and right to possession. The abandonment of rights in land does not occur if the person in possession leaves it with the intention of returning.

*In re Salinas*, 04.3 I.B.C.R. at 112 (quoting *Goldensmith et al. v. Snowstorm Mining Co.*, 154 P. 968, 970 (Idaho 1916)).

The Court can find no clear or unmistakable act or series of acts indicating Debtor's intent to abandon her homestead here. Rather, all three factors considered by the Court evince Debtor's intent on December

---

[6] After several months of not seeing one another, both Debtor and Forshee testified that, beginning in approximately May, 2010, Debtor once again returned to the Cobblestone Lane home about two weekends per month. No divorce action was initiated. Given the timing of the filing of Trustee's objection to Debtor's exemption claim, any new-found hopes of reconciliation by the parties could be viewed by the Court with skepticism as a thinly disguised attempt defeat Trustee's attempt to seize the Cobblestone home. However, the Court need not speculate, since the relevant date for the Court's analysis is December 22, 2009, prior to Forshee's announcement to Debtor of his intention to divorce.

MEMORANDUM OF DECISION - 14

22, 2009, to not abandon the Cobblestone Lane home. As a result, Trustee has not satisfied his burden of proof. *See In re Koopal*, 266 B.R. at 890 (debtors left their residence to find work but did not establish another homestead); *In re Tiffany*, 106 B.R. at 214 (a debtor's temporary absences, which were occasioned by reasonable causes, were not inconsistent with his claim of a homestead exemption).

## *Conclusion*

For these reasons, Trustee's objection to Debtor's claim of exemption will be denied. A separate order will be entered.

Dated: September 16, 2010

Honorable Jim D. Pappas
United States Bankruptcy Judge